JACKSON, *ex dem.* CHURCH and others, *against*
BROWNSON.

THIS was an action of ejectment for a farm in *Whites-town*. The cause was tried at the *Oneida* circuit, the 5th *June*, 1809, before Mr. Justice *Yates*.

At the trial, the plaintiff gave in evidence the counterpart of a lease, dated the 3d *September*, 1790, from *Philip Schuyler*, of *Albany*, to the defendant, for the premises in question, for the lives of the defendant, his wife, and *Samuel Shaw*, respectively. The farm contained 133 acres and a half. The lease contained various covenants, reservations and conditions, among which was the following: And the lessee " doth also covenant, promise and agree, that whenever he shall be inclined, or be by law or otherwise, obliged to sell, assign, &c. his interest in the premises, &c. then in that case he shall make the first offer to the lessor, &c. notifying and declaring in writing what he will take for the same; and if the lessor, his, &c. do not take it at the price required, &c. that then he, the lessor, shall, within 21 days after such notice, &c. and on the further application of the lessee, &c. grant a permit to him to sell, assign, &c. Provided always, that every sale, &c. of any part or parcel of the said premises shall be void, &c. and the premises revert to the lessor, &c. unless the seller or purchaser shall, before such sale, pay the rent in arrear," &c. " And it is further conditioned on the part of the said lessee, that neither the said lessee, his executors, &c. shall or do at any time hereafter, erect or permit, or cause to be erected, any mill or mill-dam, or any

Where a lease for life contained a covenant that the lessee should not sell or assign without the permission of the lessor, and the lessee did sell and assign a part of the premises, with the consent of the lessor, it was held, that this did not amount to a surrender, but the lessee still remained liable to every act of his assignee amounting to a breach of the covenants contained in the lease.

Where wood is cut down on leased land, by the lessee or his assigns, in such a manner as materially to injure the inheritance, it is waste, and the lessee is liable to an action for the breach of the covenant against waste; and where the lease contained a clause of reentry for a breach of the covenants & conditions in the lease, it was held that the lessor might maintain ejectment.

Where wild and uncultivated land, wholly covered with wood and timber, is leased, the lessee may fell part of the wood and timber, so as to fit the land for cultivation, without being liable for waste ; but he cannot cut down *all* the wood and timber, so as permanently to injure the inheritance.

And to what extent the wood and timber, on such land, may be cut down, without waste, is a question of fact for a jury to decide, under the direction of the court.

other work or building whatsoever, upon any kill, creek, stream, or run of water, within the premises, &c.; and further, that neither he nor they shall, at any time here-after, commit any waste."

" And in case the said lessee, his, &c. shall not perform, fulfil, abide by, and keep all and every of the covenants and conditions herein covenanted and conditioned, &c. then in each of the said cases, it shall thenceforth be lawful for the lessor, his, &c. into the whole of the said premises, or into any part thereof, in the name of the whole, to re-enter, and the same to have again, repossess and enjoy, as his or their former estate," &c.

The lessors were the heirs of *Philip Schuyler;* this action was brought to recover the possession of the south half of the premises, on the ground of forfeiture by a breach of the covenant; the lessee or his assigns having committed waste thereon by clearing and draining off the land more than a reasonable and due proportion of the wood. It was admitted that, at the date of the lease, the premises were wild and uncultivated, and covered through-out with a forest of heavy timber.

The plaintiff proved that the defendant occupied the south half of the premises, which were entirely cleared of wood, before the commencement of the suit; and that on the north half occupied by *Shaw,* the whole was cleared except about six or eight acres, on which more than half the wood and timber had been cut down and removed, be-fore the commencement of the suit.

It was also proved, that a permanent supply of fuel, timber for buildings, and wood for fences, for the use of the demised premises, would require that, at least, thirty acres should have been preserved in wood.

The defendant gave in evidence a written permission en-dorsed on the lease, dated 4th *July*, 1796, by which the lessor consented that the lessee should assign it to *Samuel Shaw;* and an assignment by the lessee of the north half of the farm to *Shaw,* subject to all the covenants, &c. con-

tained in the lease. The defendant also produced several

receipts from the lessor and his agent for rent, received of the defendant and *Shaw*, from 1st *February*, 1799, to *May* 1, 1805. It was also proved, that about 12 years since there were 35 acres of land covered with wood and timber on the premises, and about 12 acres of woodland, on that part in the possession of the defendant, only half of which was good for timber, except for fences, the residue was principally *hemlock*, and much injured by violent winds ; that the defendant had cut no wood or timber on the part in his possession, except for fuel, fences and building for the use of the farm, and which had been gradually cut, since the assignment; that since the assignment to *Shaw*, the defendant had built a house on the premises, which was completed about four years since; and had used the farm in a husbandlike manner, and had carried on more materials for fences than he had taken off; that at the time of the assignment to *Shaw*, and for many years after, cleared land was of much greater value than land covered with wood and timber; and that good farms in the vicinity of the premises had not reserved more than 12 acres of woodland out of 100 acres. The lessor had an agent to collect his rents residing at *Whitestown*, about four miles from the premises; but it appears that the agent never saw the premises, nor knew the situation of them.

The judge was of opinion, that the permission of the lessor to the lessee to assign part of the demised premises, and the subsequent recognition of the defendant and *Shaw* as separate tenants, operated as a severance of the original lease; and that the gradual clearing of that part in possession of the defendant, since the assignment, did not, in law, amount to *waste;* and he directed the jury to find a verdict for the defendant; and the jury found accordingly.

A motion was made to set aside the verdict and for a new trial, for the misdirection of the judge.

*Platt*, for the plaintiff. The waste in this case consisted in cutting down all the wood and timber. If a tenant for

NEW-YORK,
Nov. 1810.

JACKSON
v.
BROWNSON.

years, or for life, &c. does a permanent injury to the free-hold or inheritance, it is waste.[*]  Timber is a part of the inheritance,[†] and oak, ash, and elm, are timber in all places; and in some places where these are not found, other trees used for building are timber.  The definition of waste by the *English* law is taken strictly.  To convert wood, meadow or pasture into woodland; or to turn arable or woodland into meadow or pasture, are all of them waste.[‡]  There is no reason why the *English* rule should not be strictly applied to lands under cultivation in this country; though in regard to *wild* lands it ought not to be carried to the same extent; but even in regard to them, a tenant can never be allowed to cut off *all* the wood and tim-ber.  We do not ask the court to apply the common law rule strictly, but only for such a reasonable application as may prevent a permanent injury to the inheritance.  What degree of destruction shall amount to a permanent injury to the heir or reversioner, may be safely left to the decision of a jury of the vicinage.

If, then, the defendant has committed *waste*, and thereby incurred a forfeiture of his lease, has the lessor, by any act, waived that forfeiture?  Courts may lean against forfeitures, where they would press hard upon a lessee.  In *Jackson*, ex dem. *Golden and others*, v. *Brownell*,[§] the court did not seem inclined, where the covenant was explicit and une-quivocal, and clearly broken, to seek, by any latitude of construction, to prevent a forfeiture of the lease.  It was as much for the interest of the lessee, in the present case, as of the lessor, to preserve sufficient wood and timber for the use of the farm; but he has cut off every tree, without leaving any wood for fuel, or for building and repairs.

The underletting by the lessee, with the consent of the lessor, was no severance of the lease.  Where there is an ex-press covenant, an acceptance of rent from a sub-tenant does not discharge the lessee.  The lessee remains liable for all acts done by his sub-lessee.  But the defendant, since the assignment, on the strictest construction, has committed

[*] *Co. Litt.* 52. b. 53. a.
[†] 2 *Mod.* 94.

[‡] *Hob.* 296. 2 *Black. Comm.* 281, 282.  *Co. Litt.* 53. a. b.

[§] 1 *Johns. Rep.* 267.

waste on the land in his possession.   There were 12 acres    NEW-YORK,
of wood and timber on that part of the farm at the time            Nov. 1810.
of the assignment of the other part to *Shaw*, and at the       JACKSON
commencement of the suit the whole had been cut down.            v.
                                                                BROWNSON.

*Kirkland*, contra.   According to the doctrine of the
common law of *England*, the defendant could not have
cut down a single tree, without committing waste.   But
such a rule could never have been contemplated by the
parties.   It would have defeated the purpose of the lease ;
for the tenant could never have enjoyed the premises with-
out cutting down trees and clearing the land, so as to render
it fit for cultivation.   In providing against waste, it never
was intended to prevent the clearing of the land.   The
lessor, if he wished to preserve the trees, or any part of
the wood, should have provided in the lease, that only a
certain number of acres should be cleared.   In determining
what acts of the tenant amount to *waste*, the court will take
into consideration the state of the country, and the situa-
tion of the lands.   Even in *England*, regard is shown to the
state of lands in different counties ; so that what would be
waste in cutting one species of timber in one county, would
not be waste in cutting the same kind of trees in another
county.*   In this country there are obvious and very          * *Co. Litt.* 53.
powerful reasons to induce the court to adopt a far more       b. *Bac. Abr.*
                                                               *Waste,* (C.) Co-
liberal construction of the term *waste*, in regard to wood    *mmn, Waste,*
                                                               (D. 5.)   2 *P.*
and timber, than that afforded by the *English* law.           *Wms.*   606.
                                                               *Cruise's Dig.*
   Then, as to the alleged forfeiture.   At the time of the     tit. 3. s. 18, 19.
assignment of the north half to *Shaw*, there was about 20
acres of woodland to the 100 ; and the defendant cannot
be liable for the acts of *Shaw*, after he was accepted as a
tenant by the plaintiff and paid him rent.   The assignment,
by permission of the lessor, amounts to a surrender by the
lessee, and the acceptance of rent from the new tenant dis-
charges the first lessee.†   After a surrender of the term,    † *Sparrow* v.
                                                               *Hawkes,* 2 *Esp.*
an action of waste will not lie against the tenant.‡           *Cas.* 505.   But
                                                               this was not the
                                                               case of a *lease.*
                                                               ‡ *Com. Dig. Waste,* (E. 4.)

NEW-YORK,
Nov. 1810.

JACKSON
v.
BROWNSON

Again, since the alleged forfeiture, the lessor has received rent, which amounts to a waiver of the forfeiture; and the defendant has built a house, and laid out his money in improvements.* Where there is a clause of re-entry, for non-payment of rent, the lease is only voidable, and the acceptance of rent is an affirmance of the lease.

* *Cowp.* 482. 3
*Co. Rep.* 64. b.
2 *Term Rep.*
4.0, 431. 1
*Saund.* 287. b.
n. 16.

VAN NESS, J. The covenant restraining the lessee from alienating, without previously obtaining the permission of the lessor, is for the benefit of the latter. Its object was to secure to the lessor the right of preemption, and to prevent a bad tenant from being obtruded upon him. If the lessor had sold without such permission, a forfeiture of the estate would have been incurred. To effect a valid assignment, therefore, the consent of the lessor was requisite, and that in this case having been obtained, the assignment was legal, and all parties stand in the same relative situation to each other as they would have done after assignment, if the lease had contained no such covenant. The lessee covenants for himself, his heirs and assigns, and he is therefore liable for every act of his assignee, amounting to a breach of any of the covenants or conditions in the lease. To this point the cases are numerous and decisive. (*Brett* v. *Cumberland, Cro. Jac.* 521. *Bachelor* v. *Gage, Cro. Car.* 188. *Norton* v. *Ackland, Cro. Car.* 580.)

But it is said here has not been *waste.* It is a general principle that the law considers every thing to be waste which does a permanent injury to the inheritance. (*Co. Litt.* 53, 54. 1 *Cr. Dig.* 65. 6 *Com. Dig.* tit. *Waste.*) Now, to say that cutting down the wood on almost every acre of the demised premises is not *waste,* within the spirit and meaning of the covenant in the case, is to say that no waste, by the destruction of wood, can be committed at all. We are bound to give effect to this covenant if we can, but

to decide that the facts stated in the case do not constitute waste, would be destroying it almost altogether. That the destruction of the timber is a lasting injury to the reversion cannot be disputed. For this injury the lessors of the plaintiff may, at their election, bring covenant, or enter as for condition broken. For the breach of every covenant there is, by the express terms of the lease, a forfei.ure of the estate, so that whenever an act has been done which gives the right to maintain covenant, at the same moment the right to enter, as for a forfeiture, is equally given. It follows, that if this action cannot be sustained, the lessors of the plaintiff are totally remediless. It is true that what would in *England* be waste, is not always so here. The covenant must be construed with reference to the state of the property at the time of the demise. The lessee undoubtedly had a right to fell part of the timber, so as to fit the land for cultivation; but it does not follow that he may, with impunity, destroy *all* the timber, and thereby essentially and permanently diminish the value of the inheritance. Good sense and sound policy, as well as the rules of good husbandry, require that the lessee should preserve so much of the timber as is indispensably necessary to keep the fences and other erections upon the farm in proper repair. The counsel for the defendant is mistaken when he says that lessees in *England* are prohibited from cutting wood upon the demised premises altogether; the prohibition, in principle, extends no further, in this respect, there than it does here. In *England*, that species of wood which is denominated *timber*, shall not be cut down, because felling it is considered as an injury done to the inheritance, and therefore *waste*. Here, from the different state of many parts of our country, *timber* may, and must be cut down to a certain extent, but not so as to cause an irreparable injury to the reversioner. To what extent wood may be cut before the tenant is guilty of waste, must be left to the sound discretion of a jury, under the direction of the court, as in other cases.

NEW-YORK,
Nov. 1810.

JACKSON
v.
BROWNSON.

What kind of wood in *England* is deemed to be timber, depends upon the custom of the country. Wood which in some counties is called timber is not so in others. (*Duke of Chandos* v. *Talbot*, 2 *P. Wms.* 606. *Countess of Cumberland's* case, *Moore's Rep.* 812. *Co. Litt.* 536. *Cook* v. *Cook*, *Cro. Car.* 531. *Cro. Jac.* 126. *n.*) So a lessee for years is entitled to reasonable *estovers;* but he is guilty of *waste* if he cuts green trees when there is *dry wood (aridum lignum)* sufficient. So again, if there be a tenant for life without impeachment of waste, he may cut down all sorts of timber and convert them to his own use; but if he wantonly cuts timber which serves for ornament, or shelter, or which is not fit to be felled, he is punishable for waste. (1 *Cr. Dig.* 80.) The principle upon which all these cases were decided is that which I have before stated, namely, that whenever wood has been cut in such a manner as materially to prejudice the inheritance, it is waste; and that is the principle upon which I place the decision of this cause.

It may be supposed that this construction of the covenant in question proceeds upon equitable considerations, and that equity never favours any construction that leads to the forfeiture of an estate. On the contrary, the construction which I have adopted is the legal one, because I hold, that by destroying nearly *all* the wood on the demised premises, so that the land must soon be reduced to a mere common, and the buildings go to destruction for want of timber to keep them in repair, (unless it can be elsewhere obtained,) is such an injury to the inheritance, as, according to the established rules of law, amounts to *waste*. For my part, therefore, I lay all equitable considerations out of view, and proceed upon strictly legal grounds.

That the lessors of the plaintiffs, or their ancestors, had waived the forfeiture by the acceptance of rent, was not the ground upon which the judge directed the jury; and probably the attention of neither of the parties was directed to this point at the trial, though it is now insisted upon. As the case at present stands, there has been no waiver. It does

not appear that the lessors, or their ancestor, knew that a forfeiture had been incurred, and the acceptance of rent, unless they did at the time know this fact, is no waiver. (*Roe, ex dem. Gregson,* v. *Harrison,* 2 *Term Rep.* 425. *Mathews* v. *Whetton,* *Cro. Car.* 233.) On this part of the case further light may, perhaps, be thrown on a future trial.

My opinion therefore is, that the motion for setting aside the nonsuit, and granting a new trial, ought to be granted.

NEW-YORK,<br>Nov. 1810.<br><br>JACKSON<br>v.<br>BROWNSON.

KENT, Ch. J. and THOMPSON, J. were of the same opinion.

SPENCER, J. It is an established principle that in construing a covenant which is to work a forfeiture, courts adhere strictly to the precise words of the condition, in order to prevent the forfeiture. This rule, for its equity and reasonableness, deserves constantly to be kept in view. It is, in most cases, rigorous and harsh to break up a lease, for the violation of covenants which may be compensated in damages; and the present case appears to be one of that description.

The lease under consideration is to receive a double construction; a liberal one as to the thing leased, and the use and enjoyment of it by the lessee, so as to effectuate the intention of the parties; and a literal one to prevent the forfeiture.

The land was covered with heavy timber; and, for the use of it, the lessee was to pay a rent. The parties must, therefore, have intended that the lessee should be at liberty to fell the timber to a certain extent, at least, for agricultural purposes.

If the restriction to commit *waste* would operate to restrain the lessee from the use of the premises, it would be void, as repugnant to the grant. I shall have no difficulty in maintaining that, according to the common law of *England*, the lessee could not enjoy the land, nor derive any benefit from it without the commission of waste; and should

that point be established, this covenant must be rejected. The general definition of *waste* is, that it is a destruction in houses, gardens, trees, or other corporeal hereditaments, to the disherison of him in remainder or reversion. It is not every injury to lands that the law considers as waste, nor every act which injures the remainder-man, or the reversioner. To test this supposed waste by considering the reversioner injured by the acts done, is not warranted by law; and, in point of fact, when the premises were cleared of the timber, cleared land was more valuable than woodland. Cutting down *oak*, *ash* and *elm*, after they arrive at the age of 20 years, is waste, they being timber throughout *England*. (*Com. Dig.* tit. *Waste*, D. 5. *Co. Litt.* 53. a. and b. 2 *Roll.* 280. l. 10.) In the present instance, the case does not state what species of timber was cut down; but the land was covered with heavy timber, and was a forest; and I am free to admit, that other trees than *oak*, *ash* and *elm*, may be the subject of waste, if they constitute the timber of the country where they grow. Every tenant has certain rights under his lease. Unless restrained from cutting wood altogether, he has a right to house-*bote*, fire-*bote*, plough-*bote* and fence-*bote*. For the purposes of fuel, he is bound first to take the *dry*, fallen, and perishing wood; for the purposes of erecting necessary buildings, he has a right to fell timber, and so for the other *botes;* but I insist that, according to the common law of *England*, no tenant can cut down timber, &c. or clear land for agricultural purposes; and that the quantity of timber cut down never enters into the consideration whether waste has or has not been committed; but that it is always tested by the fact of cutting timber, without the justifiable excuse of having done it for house-*bote*, fire-*bote*, plough-*bote* or fence-*bote*. A single tree cut down, without such justifiable cause, is waste as effectually as if a thousand had been cut down; and the reason is this, that such trees belong to the owner of the in-

heritance, and the tenant has only a qualified property in them for shade and shelter. (1 *Cruise*, 62, 63. tit. 3. s. 15. and 18.)

The doctrine of waste, as understood in *England*, is inapplicable to a new, unsettled country. If the parties before us intended that a sufficient quantity of timber should be left for the use of the farm, it was very easy to have inserted a covenant to that effect. We are tied down, in the present inquiry, to a literal, technical construction of the covenant, and have no right to go into the intention of the parties, or adopt any equitable notions. If this was an action of covenant to recover damages for having cut down all the timber on the premises, then indeed we should have a right to give the covenant not to commit waste a greater latitude of construction. The criterion set up by the plaintiff, to decide whether waste has been committed, is altogether fanciful and vague; and the case shows, that men differ very widely as to how much woodland ought to be left for the use of a farm. The rule furnished by the common law is fixed and certain; and the lessor knows what wood he may cut and for what purposes; but if a covenant not to commit waste is hereafter to be considered as a covenant to leave a sufficient quantity of land in wood, no lessee is safe. If the act of cutting timber on the premises, without the justifiable excuse already stated, was not waste, cutting more or less was immaterial. Under the covenant not to commit waste, we have no right to say some waste might be committed, and other waste might not; the covenant is inapt to the case, and if any remedy exists, it must lie in covenant. I am, therefore, against granting a new trial.

YATES, J. was of the same opinion.

Rule granted.