---
Clarke *v.* Cummings.
---

*Oneida Gen. T, Bronson Gridley & Allen, JJ.*

SAME TERM.    *Before the same Justices.*

## CLARKE *vs.* CUMMINGS.

What is a reasonable search and inquiry for the persons upon whose lives, the continuance of the estate of a lessee is made, by the terms of the lease, to depend, is a mixed question of law and fact, to be determined upon the particular circumstances of each case.

The circumstances *may be* such as to render an inquiry of the tenant, only, a reasonable inquiry and search, *it seems.*

The conditions of a lease do not become severed, by a severance in the occupation

Clarke *v.* Cummings.

of the demised premises, and in the payment of rent to the lessor by the respective occupants, for the portion occupied by each.

Hence if either a lessee, or an assignee of the lease as to a portion of the demised premises, commits any act which, by the terms of the lease, creates a forfeiture of the estate, the forfeiture attaches to the whole of the premises embraced in the lease.

Where a lease contained a covenant, on the part of the lessee, that he would not cut or destroy any part of the timber and wood growing on the demised premises, except for making or repairing buildings to be erected on the land, and for necessary fencing, and fuel for one dwelling house, with a clause of re-entry by the lessor, for a breach of any of the covenants by the lessee; and it was proved in an action of ejectment brought by the lessor against the lessee, that the latter had cut timber and trees for purposes not authorized by the lease; *Held* that the lessee could not escape the consequences of the forfeiture incurred by such act, on the ground that he had procured his fire wood and fencing timber from other land, and that he had not withdrawn from the demised premises more wood than the lease authorized him to take, although he had used it for other purposes.

In such a case the fire wood of the tenant should be *reasonable estovers.*

Where a lessee covenants that he will not use any of the wood or timber growing on the demised premises, except for certain objects specified in the lease, if he uses wood or timber for other purposes, and such wood or timber is not suitable for the objects specified, he commits a wrong against the lessor, and diminishes the value of his reversionary interest in the premises. *Per* GRIDLEY, J.

A lessee, authorized by the lease to cut wood for fuel or fencing, must comply substantially with the conditions of the lease. He cannot omit, for years, to take fire wood and fencing timber from the premises, suffering the wood proper for those uses to be destroyed and wasted, and then, by way of compensation or indemnity, enter upon the premises and take timber and wood to which the lease gives him no right, *Per* GRIDLEY, J.

The receiving of rent, by a lessor, after the commission of acts by the lessee entitling the lessor to declare the lease forfeited, if the rent was accepted with a knowledge of those acts, amounts to a waiver of the forfeiture.

EJECTMENT for a farm, situated in the county of Otsego, tried at the circuit in that county in July, 1848, before Justice MOREHOUSE. On the trial, the plaintiff gave in evidence a lease from George Clarke of the first part, to Samuel Thomas of the second part, dated February 13, 1795, of lot No. 36 in the subdivision of great lot No. 24 in the Oothout patent, for and during the natural lives of the said Samuel Thomas, Phebe Thomas his wife, and John Thomas his son, so always that the term should not endure less than thirty-one years, and reserving an annual rent of six pounds nine shillings and six

pence, payable on the 4th day of February in every year. The said lease contained, among others, the following covenants: "And that he the said party of the second part, his executors, administrators or assigns, shall and will within the space of four years, to be computed from the day of the date of these presents, plant one apple tree on the said premises for every five acres contained in the premises hereby demised, in some convenient part of the said piece or parcel of land, in straight lines crossing each other at right angles, at the distance of thirty feet from each other; and as often as any of the said trees shall die or decay or be destroyed, during the term aforesaid, shall and will plant other trees in the place or stead of those which shall die, decay, or be destroyed, and the same trees shall maintain and keep in good and sufficient order; and that if default shall at any time during the said term be made in planting the said apple trees, or any of them, or in replacing such as shall decay or be destroyed, in manner and form hereinbefore provided, that then and in such case the said party of the second part, his executors, administrators or assigns, shall and will pay to the said party of the first part, his heirs or assigns, within one year after such default shall be made, the sum of twenty shillings for every apple tree so deficient. And also that the said party of the second part, his executors, administrators and assigns, shall and will, from time to time during the term aforesaid, retain and keep and set apart one-sixth part of the said land for wood, and shall not or will not cut or destroy, or permit any person or persons whatsoever to cut or destroy any part of the timber and wood growing thereon, excepting only for making or repairing the buildings to be erected on the said piece or parcel of land, and for necessary fencing, and fuel for one dwelling house on the same." The said lease also contained, after the above covenants, the following provisos: "Provided always, and these presents are upon the condition nevertheless, that if the said yearly rent of six pounds nine shillings and six pence, or any part thereof, shall be behind and unpaid by the space of six months after any of the days hereby limited for payment thereof, or if the said party of the second part, his executors,

Clarke *v.* Cummings.

administrators or assigns, shall neglect or refuse to perform any of the covenants contained in these presents, that then and from thenceforth it shall and may be lawful to and for the said party of the first part, his heirs or assigns, into the said piece or parcel of land hereby demised to re-enter, and the same and every part thereof to have again, repossess and enjoy, as in his and their first and former estate, any thing herein contained to the contrary thereof notwithstanding : and provided further, that if the said party of the second part and Phebe Thomas and John Thomas aforesaid, or any of them, shall not reside on the lands hereby demised, and none of them can after *reasonable search and inquiry* be found, that then and in every such case after the expiration of the said thirty-one years, and after the expiration of one year from the date of a notice to be given in writing, by the said party of the first part, his heirs or assigns, to the *tenant* of the said land hereby demised, that such search and inquiry has been made without effect, it shall and may be lawful to and for the said party of the first part, his heirs or assigns, into the said piece or parcel of land, or into any part thereof in the name of the whole, to re-enter and the same to have again as his or their first or former estate, unless one of the said persons shall be produced before one of the judges of the court of common pleas of any county in the state of New York, or proof made by the affidavit of two or more credible witnesses, before any of the said judges, that one of the said persons is in full life, and unless the said party of the first part, his heirs or assigns, shall receive a certificate of such production and proof, and a note of the place of residence of such person, before the expiration of the said year, signed by the said judge." The lease also described the demised premises as containing 129½ acres of land.

Robert D. Campbell was then called as a witness by the plaintiffs, who testified that he served a notice on the defendant in January, 1847, of which the one shown him was a copy ; that he served at the same time a similar notice on Hiram Denton ; that he knew the farm the defendant lived on. Denton occupied a part of it. The notice was served on the 20th of Jan. 1847.

Witness served the notice by the direction of the plaintiff, who was with him at the time.   Witness subsequently served notice on the defendant to pay rent, a year ago last spring.    The notice referred to by this witness as having been served by him in January, 1847, was in the words and figures following: " To Messrs. D. A. Cummings and H. Denton.   You will please take notice, that I have made reasonable search and inquiry to ascertain whether any of the persons are in being on whose lives the lease of farm No. 36, lot No. 24 in Oothout's patent, from George Clarke to Samuel Thomas, depends ; and that I cannot ascertain by such search and inquiry that either of said persons is living.    You are therefore notified to produce proof of the existence of one or more of the lives in said lease, agree-ably to the covenants in said lease contained ; in default whereof proceedings will be commenced to recover the premises from you.   Dated the 18th day of January, 1847.   Yours, &c. George Clarke."   Richard Cooper, a witness on the part of the plaintiff, testified that he was the agent of the plaintiff, and was the agent of his father when living ; that for the first few years from 1830, when he commenced to act as agent, the rent on farm No. 36, lot No. 24, Oothout's patent, was paid by Samuel Thomas as the lessee, and then the defendant and Hiram Den-ton paid it ; witness thought they had paid it since 1835, up to the rent which was due in February, 1847 ; that rent was paid in the spring or summer of 1847 ; and that with the exception of the rent due in February, 1848, all the rents had been paid. On his cross-examination the witness stated, George Clarke, the plaintiff, became first entitled to the rents in July, 1843, when he became of age ; that the plaintiff had made inquiries of the witness concerning the lives in the lease of farm 36, but he did not know of his making any other inquiries except from his declarations.    The witness inquired concerning the lives ; he asked the defendant, two or three years before the service of the notice, to prove his lives, if any of the lives were in being ; and he said that Mrs. Thomas, his wife's mother, was living in Chautauque county, but he could not state in what part of the county ; the rest he thought were dead.    Witness could not

Clarke v. Cummings.

speak with confidence as to the time he inquired of the defendant; it was at least a year before the service of the notice. Denton paid rent in 1847. Hiram Denton was sworn as a witness by the plaintiff, and testified that he occupied half of the farm in question; that he knew Samuel Thomas, who lived where the defendant now does; that Mr. Thomas was dead; that the defendant had occupied his part of the farm a number of years; that witness knew Phebe Thomas, Samuel Thomas's wife. John Thomas and Phebe Thomas did not reside on the premises in January, 1847; witness lived on a farm adjoining the defendant's. Mrs. Thomas lived where the defendant now does, when witness came into the country; witness thought she had now been gone some eight or ten years; she went to the western part of the state; from the time she left she had not been on the farm or in that part of the country, to the witness' knowledge, nor had John Thomas, the son. The defendant married a daughter of Mrs. Thomas. Robert D. Campbell was then recalled by the plaintiff, and testified that at the time of the service of the notice on the defendant and Denton, the plaintiff asked Denton if any of the lives were living; he said he did not know that there was, but they said there was one living. On the evidence thus introduced on the part of the plaintiff the counsel for the defendant maintained and insisted that the plaintiff had not shown that he had made the reasonable search and inquiry for the lives which the lease required, and that he had not therefore made out a right to serve the notice to prove the lives. The counsel for the plaintiff maintained and insisted that such reasonable search and inquiry had been shown, and that the plaintiff had therefore a right to serve the notice to prove the lives.

The court ruled that the facts proved by the plaintiff did not show that he had made the reasonable search and inquiry for the lives required by the lease, and that therefore he had no right to serve the notice on the defendant to prove the lives; and that the defendant was not bound to answer such notice. To this decision of the court, the counsel for the plaintiff excepted. The plaintiff then proved by Benjamin Huntington

Clarke *v.* Cummings.

that he was a surveyor; that a few days before, he had sur-
veyed and measured the woodland on the farm in question;
that there was thirteen acres, one rood and eleven rods of wood-
land on the farm; that in his opinion not more than one-half
of this could be called timber, the rest was wood of second growth,
some older and some younger.   That the wood on the farm was
in three separate parcels.   That one parcel contained 5 acres 29
rods, which was on the part of the farm occupied by Denton.
That another parcel contained 5 acres, 1 rood and 6 rods, that
of this rather more than one half was on the defendant's part
of the farm; that the remaining parcel contained 2 acres, 3
roods and 16 rods, all of which was on the part of the farm oc-
cupied by the defendant.   That besides these three parcels,
there was a strip of brush some 30 or 40 rods in length; and in
some places a rod in width, and in others hardly any thing,
and also about 13 trees in another part.   That he also ran
around and measured the boundaries of the farm, and according
to his calculation, it contained 136 acres, 3 roods and 26 rods of
land.   William Grover, a witness for the plaintiff, testified that he
resided near the defendant, his land adjoining the defendant's;
that he knew the farm the defendant lived on; that witness'
house was near the southerly line of the defendant's farm;
that he had seen the defendant's son, Alexander Cummings, cut-
ting wood on the part of the farm in the occupation of the defen-
dant; he was living with his father at the time; that he cut
over a small spot; witness saw a coal pit near where he was
cutting; after witness saw him cut, he cut at different times in
the summer of 1840, and the coal was burnt in the fall; that
witness had himself cut wood on the same part of the farm;
that witness and his father had about seven acres of the farm,
for which they paid rent to Cummings and Denton; that wit-
ness cut wood on it, first, in 1840, and several times *since.*
The wood so cut was burnt in witness' house, which was not
on this farm but on his own land.   That he had also cut on the
same land since 1840, one tree as a shaft for a saw-mill; that
he had seen wood cut on Denton's part of the lot; that he had
seen several persons cut there; had seen Mr. Denton's boys chop

firewood; about four years ago, Mr. Denton hauled some ma-
ple logs to witness' saw-mill, from the farm in question, they
were sawed into wagon axletree stuff principally; there were
between twenty and thirty logs; another lot of timber was
hauled by Mr. Denton, last winter; this was a few hemlock
logs, about a dozen, some green and some old.   Witness could
not say how many of them he cut on the leased farm; some
had been sawed into plank, the others were not sawed yet.
On his cross-examination, the counsel for the defendant offered
to show by the witness that the defendant obtained his fire-
wood and fencing stuff not from the farm in question, but from
another.   This testimony was objected to by the counsel for
the plaintiff as irrelevant, but the objection was overruled by
the court, and the testimony allowed to be received.   To which
decision of the court, the counsel for the plaintiff excepted.
The witness then testified that the defendant had got his fire-
wood from another farm; witness thought he had seen him
get it every season; that he had not got firewood from the
farm in question, within the last eight or ten years to witness'
knowledge; witness had seen him get wood frequently from
his other farm, but did not know of his cutting any fence timber
on the farm in question, in the last 8 or 10 years, what stuff he
had used he had got from the other farm; that Hiram Denton
had another wood lot; that witness could not tell what kind of
timber was put in the coal pit; but thought it was principally al-
der.   On being re-examined by the plaintiff, the witness testi-
fied there were other trees growing where the defendant cut
besides alders, there were elm, birch, beech, and other kinds;
that there were half a dozen left standing; that alders grow
to the height of 25 feet, when they usually die and others spring
up; some of those cut were two or three inches, some perhaps
four inches through.   Jerome Snyder testified that he was a
blacksmith, and had bought coal of Alexander Cummings, the
son of the defendant; that he went on the defendant's farm for
the coal; that he went where the coal pit was, and got about
two hundred bushels; that he could tell from coal the kind
of wood from which it was made; that this coal was most-

ly made from alders; the alders might have been three or four inches through, though a good deal of it was smaller.

Hiram Denton being recalled by the plaintiff, testified that the house in which he lived was not on the farm in question; that it stood on land of his own, adjoining; that there was but one house on the farm which was occupied by defendant; that witness had cut timber on the farm in question; it was mostly wild when he came on to it, thirty years ago. There was then ten or fifteen acres improved; witness had cut wood on the farm within a few years past; that he had cut different kinds, some for stakes, some for rails, and some for firewood; that he cut some to draw to mill, but none that grew on the wood-land; it was maple timber; that he could not say whether he drew the hemlock to mill from his own land or the farm in question; that he sold one thousand feet of the sawed maple stuff, a part of it he had piled up, and a part he used for fence; that he had not cut any other wood on the farm except for clearing; that he had bought his own wood chiefly, and most of his rail timber for some years; that some four or five years ago, he cut nearly two acres for the purpose of clearing; it had been burned over, and since then a half a dozen loads, which were the tops of trees, he had cut for fencing; that witness sold part of the wood that he cut from the two acres he cleared, and burnt the rest at his own house; that there had been no wood cut on Cummings' part since witness cleared the two acres, that he knew of; that he had cut for fencing since clearing the two acres, and cut the maple timber a year or two before he cleared the two acres; that about the same time he cut the maple he cut some loads of wood which he burnt in his house; that he should not think there was much less wood on the farm now than when he cleared the two acres; that he had occupied a separate part of the farm during the time, he had been there for thirty-three years; that his father first lived on it, and he succeeded him; the rent for that portion had always been paid separate; formerly took receipts separate; now witness takes separate receipts for the portion of rent paid; and that Cummings pays in the same way. When witness pays

Clarke *v.* Cummings.

rent he pays on that portion of the lot. Receipts for half the lot were taken from Mr. Morell; witness could not say how long defendant had been on the farm, but he thought eight or ten years; that the defendant had got all his wood from other lands; that at the time of clearing the two acres there was a little over eleven acres left on his part; that there had been no rail timber on the farm for several years; that witness had bought rails; that the quantity of wood-land now was about the same as at that time; that witness twice paid rent to Mr. Morell for his father, and on one occasion took a separate receipt for his part, that is for the southerly half of the lot; and he thought he had seen two other such receipts; but had taken no such receipt since; that he had paid rent for himself 20 or 21 years; that the money was paid either on account, or in full, according as defendant had paid before or not; witness paid rent the last time a year ago last May. Robert D. Campbell was then recalled by the plaintiff, and testified that he was with Mr. Huntington when he surveyed the farm, and saw two hemlock trees lying on defendant's part of the farm; they had been cut down, one had been cut down longer than the other, and had the appearance of being cut five or six years, the other looked as if it had been dead when standing, and not long cut; that witness counted the apple trees on the farm; there were twenty-three, of these there were three decayed; one of the trees was by itself in another lot; this was sound; his were in the same lot as the orchard, but stood two or three feet apart and about 4 rods from the rest; of these two, one was partly decayed, the other decayed tree was in the orchard in one of the rows; that these were all the apple trees standing on the farm, and were all on the part occupied by the defendant; that the tree that had its body decayed looked as if it had been decayed some time; that witness counted the trees from the road, and had directions to count the trees from the plaintiff; did it last Saturday, and since the survey was made. The witness also testified, in answer to a question by defendant's counsel, that he served a notice to pay rent on this farm in the spring of 1847. Richard Cooper was then recalled by plaintiff, and testified that since

Clarke *v.* Cummings.

his agency began he had never received the rent of one half of the farm as such ; that the account had been kept with the whole farm, and whenever any payment was made less than the whole rent due, it was received and credited on account of rent; that as respects the amount paid, Mr. Denton and the defendant have each paid one half of the rent; that Mr. Clarke, the lessor, died in November, 1835, and the plaintiff is his devisee. The testimony for the plaintiff being closed, the counsel for the defendant moved for a nonsuit, and in support of such motion maintained and insisted that notice to quit was necessary before the action could be maintained; that there was no breach of the covenant in respect to wood, because the defendant, since his occupation of the farm, had obtained his fire wood and fencing stuff elsewhere, and had not used from the farm for these purposes near as much as he had a right to, under his lease. That as the defendant and Denton occupied in severalty, and each had paid one half of the rent, no act or omission of Denton on his part of the farm, could work a forfeiture of the estate of the defendant; that the defendant was bound to have on his part of the farm only one half of the whole number of apple trees required by the lease, and having materially more than this, there could be no forfeiture of his estate on the ground of a deficiency of apple trees ; and that if there were any forfeiture of the lease, for any reason, it had been waived by the acceptance of rent accruing since the forfeiture. The counsel for the plaintiff, in opposition to such motion, maintained and insisted that in the case of a re-entry for a forfeiture, no notice to quit was necessary; that the covenant in respect to the wood had been broken by the defendant, even if the acts committed on his part of the farm were alone taken into consideration; that as there was less than one-sixth of the farm in wood the defendant had no right to cut a single stick, except for the purposes named in the lease; that all the wood standing on the farm, then being less than a sixth, was subject to the covenant, without regard to the circumstance that the defendant had obtained his fire wood and fencing timber elsewhere, instead of cutting that growing on the farm ; that there was no sever

Clarke *v.* Cummings.

ance of the lease on the part of the landlord, so as to restrict the consequences of a forfeiture by Denton to his portion of the farm; and that if there was a forfeiture of his part there was of the whole; that the covenant in respect to the apple trees was broken; that this was a continuing covenant; that the acceptance of rent only waived the breach of it up to the time of such acceptance; and that if, as in this case, the breach continued, a forfeiture resulted; that if the whole number of apple trees was less than the lease required for the whole farm, a right of re-entry existed against the defendant, although he had more than half the number on his portion of the farm, and that acceptance of rent merely was never of itself a waiver of a forfeiture; that to produce this effect it was necessary that the landlord should have a knowledge of the facts constituting the forfeiture, of which there was no evidence in this case. The court decided that the covenant, as to the wood, was for the benefit of the farm, and not of the reversioner. That where the covenant is a continuous one, a breach before assignment cannot be revived against an assignee without notice to the assignee that he must comply with the covenant. That in this case the landlord having received rent from the tenants of the farm for many years, in moieties, he had thereby consented that they might occupy in severalty. And that under these circumstances a breach of the covenant relating to the wood, by Denton, on his part of the farm, did not operate as a forfeiture of the estate of the defendant. That the claim of the plaintiff being *stricti juris*, the case should be brought within the penalty, on a liberal construction of the covenant. That there should be a breach of the spirit of the contracts as well as the letter, and that the cutting and disposing of the alders by the defendant, a short lived wood, and soon replaced by the growth of other alders, was no breach of the covenant in the lease in respect to wood. That as to the apple trees, there was no evidence that the requisite number was not standing at the time of the commencement of the suit; but granting that there was a deficiency at that time, it was from decay, and must have been of years standing, and the forfeiture from

this cause having been repeatedly waived by the acceptance of rent, could not be enforced without notice to the defendant to fulfil the covenant.   That as the defendant had on his half of the farm more than one-half of the number of apple trees required for the whole farm, there could not be, as respected him, under the circumstances of the case, a forfeiture for a deficiency of these trees.   The court, for these reasons, granted the motion for a nonsuit; and the plaintiff, on a bill of exceptions, moved to set the nonsuit aside.

*R. Cooper,* for the plaintiff.   I.  The lease was forfeited by not producing proof of the existence of one or more of the lives; and the judge erred in ruling that, on the facts shown, the plaintiff had no right to serve the notice to produce this proof. The covenant on this subject contemplates that unless the landlord, on *reasonable search* and inquiry can *actually* find one of the persons on whose lives the lease depends, and it becomes necessary to resort to *evidence* to ascertain the existence of one of them, that such evidence shall be furnished by the tenant, in the manner, and of the kind, specified in the lease. But if the landlord, notwithstanding none of the persons sought for can be found on reasonable search, is still bound to make reasonable inquiries, to ascertain whether or not any of them be living, the covenant was broken by the non-production of the required proof, because the plaintiff did make such inquiries. (*Bank of Utica* v. *Bender,* 21  *Wend.* 643.)   II. The lease was forfeited by a breach of the covenant in respect to the wood; and the judge erred for this reason in granting a nonsuit, and also in his ruling in reference to this point.   The defendant by his own acts, and the acts of those holding under him, had broken this covenant, and consequently his estate was forfeited, even if the law, as respects him, would not create a forfeiture from the acts of Denton his co-tenant.   (13  *Wend.* 530.)   There was no waiver of the forfeiture by the plaintiff.  (3  *Cowen,* 231.   7  *John.* 235.   *Tay. Land. & Ten.* 61.   1  *Man. & Ry.* 694.)   The judge erred in ruling that this covenant was for the benefit of the farm, and not of the reversioner.   The judge

erred in ruling that cutting the alders was not a breach of this covenant. (13 *Wend.* 530. 7 *John.* 234, 5. 1 *Id.* 270. *Tol. Law of Ex'rs,* 193.) The estate granted by the lease was forfeited by the breaches of the covenant, in regard to the wood, committed by Denton, the co-tenant of the defendant. The judge erred in ruling that the receipt by the landlord, of the rent in moieties, from the defendant and Denton, respectively, under the circumstances, prevented the acts of Denton from working a forfeiture of the estate of the defendant. (7 *John.* 227. 1 *Id.* 267.) All derivative estates are defeated by the operation of a condition. (*Shep. Touch.* 120, 1. 20 *Law Li.* 233, 275. *Preston on Estates,* 46. *Bac. Abr. tit. Conditions. O.* 4. *Co. Litt.* 202. *Wood. Land. & Ten. by Harrison,* 228.) A condition cannot be divided : if it exist at all it must exist as to the whole premises, unless by express agreement, at the time of its creation, it be restrained to a part. (*Shep. Touch.* 121, 127, 157, 158.) III. The lease was forfeited by a breach of the covenant in regard to the apple trees ; and the judge erred for this reason in granting a nonsuit. The requisite number of trees was not standing. This was a continuing forfeiture. (13 *Wend.* 530. *Tay. Land. & Ten.* 61. 1 *Man. & Ry.* 694. 1 *John. Cas.* 125.) The judge erred in ruling that in such cases a notice to the tenant to comply with the covenant was necessary before the forfeiture could be enforced. (13 *Wend.* 530.) IV. The judge erred in admitting the evidence in respect to the defendant's getting his wood elsewhere.

*E. Brown,* for the defendant. I. The plaintiff had no right to serve the notice until he had made reasonable search and inquiry, which he had not done. (*Hogeboom* v. *Hall,* 24 *Wend.* 150.) II. The nonsuit was right. (1.) The covenant for the wood was for the benefit of the farm, and not for the benefit of the reversioner. (23 *Wend.* 506. 2 *Bl. Com.* 122, 283.) (2.) The breach, if any, being before the assignment, could not be revived against the assignee without notice to the assignee that he must comply with the covenant. (7 *John.* 283.) (3.) The landlord, by receiving the rent in moieties, consented to the oc-

cupancy in severalty, and Denton's cutting wood did not operate as a forfeiture. (*Ad. on Eject.* 193, 148, 174, 195. 1 *Denio*, 516. 3 *Id.* 135.) (4.) The claim of the plaintiff being *stricti juris*, the case should be brought within the penalty, on a liberal construction of the covenants. (*7 Hill*, 253. *Ad. on Ej.* 162, 192, 173. 15 *John.* 278.) (5.) Cutting the alders was not a breach of the spirit of the contract in respect to wood. (6.) There was no evidence that there was not the requisite number of apple trees when the suit was commenced; but if there was a forfeiture, the same had been waived by the acceptance of rent. (*Ad. on Ej.* 193. 13 *Wend.* 530. 3 *Cowen*, 229.) The tenant might pay twenty shillings, or plant the trees in one year. (7.) As the defendant had more than half the number of trees required on the whole lot, there could be no forfeiture. III. If the defendant and Denton did not hold the premises in severalty, still the acceptance of rent was a waiver of that breach: and as there was no breach of covenant on account of the wood and in taking rent, the estate is not forfeited by any subsequent acts. (*See* 13 *Wend.* 530; 3 *Cowen*, 229, *and cases above cited.*) Enough was proved, to show a knowledge of the forfeiture, if any, in the plaintiff. If there was any doubt, he might have had the case submitted to the jury on the questions of fact.

*By the Court,* GRIDLEY, J. What is a reasonable search and inquiry for the lives upon the continuance of which the estate of the defendant in this cause was made by the terms of the lease to depend, is a mixed question of law and fact to be determined upon the particular circumstances of the case. What would be reasonable in one case might not be in another. I am of the opinion that the circumstances *may be* such as to render an inquiry of the tenant *only*, a reasonable inquiry and search. If it were proved that the tenant was the *only* relation of the person whose life was in question, living in the vicinity of the lands, then an inquiry of the tenant would be enough; provided it were made at a reasonable time before the service of the notice to prove the existence of the lives in ques-

Clarke *v.* Cummings.

tion. In this case, although the tenant was a son-in-law of Mrs. Thomas, it does not appear but that she had other and nearer relatives, of whom a more successful inquiry could be made. In truth her own daughter, (the wife of the tenant,) might have been able to give information, in relation to the person with whom her mother was residing, and in relation to the residence of such person, had the inquiry been made of her. Again; had the tenant himself been a second time inquired of within the year or two which preceded the service of the notice upon him, it is by no means improbable that he would have been able to satisfy the inquiry. If Mrs. Thomas was indeed living in the county of Chautauque, it was within the power of the tenant to have ascertained the particular place of her residence; and his interest to preserve his land, prompted by Mr. Cooper's inquiry, would naturally have led him to do so, before the notice was served. In the absence, therefore, of all such inquiries as have been suggested, I think the judge was right in holding that *at the time when* the notice was served, reasonable search and inquiry had not been made. It is no answer to say that, if Mrs. Thomas was alive she might have been produced, or proof made, pursuant to the provisions of the lease, that she was alive, within the year after the service of the notice. Such production and proof would have imposed a burden upon the tenant, which he was not bound to assume, until a search and inquiry, such as should be reasonable, had been made by the landlord. We do not think that a foundation was laid for calling on the tenant to produce Mrs. Thomas, or to prove the continuance of her life under the provisions of the lease.

We however do think, that there was proof which raised a presumption of her death, which, if that had been made a ground of objection to the nonsuit, the defendant should have been required to repel by evidence. It is enacted (1 *R. S.* 749, § 6) that "if any person upon whose life any estate in lands or tenements shall depend, shall remain beyond sea, or shall absent himself IN THIS STATE or elsewhere, for seven years together, such person shall be accounted *naturally dead,* &c.

Clarke *v.* Cummings.

unless sufficient proof be made in such case of the life of such person." This is a substantial transcript of the former act, which was passed in 1788, and is found in 1 *R. L.* 103, § 1. Accordingly we find it laid down (2 *Phil. Ev.* 285) that "the presumption of the continuance of human life ends, in general, after the expiration of seven years from the time when the person *was last* KNOWN to be *living.*" The same rule is laid down, in the same way, by Starkie. (*Stark. on Ev.* part 4, 457, 1121, 1252. *See also* 6 *East,* 80 ; 4 *Barn. & Ald.* 433 ; 2 *Id.* 386.) In this case there was no evidence of the existence of the life in question, except what was derived from the defen-- dant himself, for the last eight or ten years. It was therefore not a case to be adjudged in favor of the defendant upon this point, had the plaintiff's counsel presented this question to the justice upon the trial.

The lease under which the defendant claimed, contained several covenants to be performed by the lessee ; and it was made a condition that the lessor, his heirs or assigns, might re-enter for a neglect or refusal to perform any of the covenants. One of the covenants is stated in the following words : " And also that the said party of the second part, his executors, adminis- trators and assigns, shall and will from time to time during the term aforesaid, retain and keep and set apart *one-sixth part* of the said land for wood, and shall not, or will not, cut or destroy, or permit any person or persons whatsoever to cut or destroy *any part of the timber and wood* growing thereon, excepting only for making or repairing the buildings to be erected on the said piece or parcel of land, and for necessary fencing, and fuel for one dwelling house on the same." The premises were estimated in the lease to contain 129½ acres of land, one-sixth of which would be 21 acres and a fraction over. A surveyor testified that he had ascertained the quantity of wood land remaining on the farm, and the same fell about seven acres short of the required quantity. It also appeared that for several years past the farm had been occupied in two parcels, by the defendant and one Denton, who had occupied the premises and paid their rent in severalty. The rent, however, though paid by each

tenant, for the part which he himself occupied, was nevertheless received by the agent of the plaintiff, and credited on the lease generally. Upon this state of facts several questions arose upon the trial, and are now presented for our decision.

1st. Whether, by this severance in the occupation of the premises and in the payment of the rent by the respective occupants, the conditions of the lease have become severed, so that an act which would work a forfeiture of the lease, if committed by a sole tenant, will now work a forfeiture of the share only which is held by the tenant who commits the act. In other words, whether the several tenants are to be treated as separate lessees, each of whom is responsible for his own acts only.

No authority has been cited which shows that when the covenants and conditions are entire, as they are here, embracing the whole premises conveyed by the lease, and by the very terms of the lease made applicable to them as to one undivided parcel of land, or farm, the mere receiving, from the several occupants, for their convenience, the portions of rent agreed on between the co-tenants as the portions of each, will have the effect to work a change in the scope and application of the covenants. If this were so, the intention of the lessor, to preserve a given quantity of wood and timber land, and to protect the premises from the destruction of wood and timber on the part so reserved, would be liable to be utterly defeated. On the contrary, we understand the rule to be established otherwise; and that such a consequence does not follow unless the title to the reversion, or the right to receive the rents, has been severed, so as to be vested in different persons. (*See* 3 *Kent's Com.* 469; 3 *Denio*, 140; 1 *Id.* 516.) In this particular case, all that could, in any view of the case, be inferred against the lessor, would be a consent to a separate holding and occupancy, by the second tenant, SUBJECT however to the covenants in the lease. This was expressly so held in *Jackson* v. *Bronson*, (7 *John.* 227.) In that case, the lessee assigned the north half of the premises (by the written consent of the lessor) to one Shaw, who cut off all the timber on his part of the lot. It was there held, however, that the lessee was responsible for any act of his assignee

amounting to a breach of the covenants or conditions of the lease. (*See opinion of Van Ness, J. on p.* 232, *citing Cro. Jac.* 521 ; *Cro. Car.* 188, 580.) We therefore think that if either the defendant or Denton has committed any act which, by the terms of the lease, creates a forfeiture of the estate, the forfeiture attaches to the whole lot originally leased.

2dly. The next question is, whether the acts of cutting off the wood and timber, which were proved on the trial of this cause, have worked a forfeiture of the estate.

(1.) The very fact of cutting and clearing off the wood from the farm so as to leave only 13 instead of 21 acres of wood, was an act which created a forfeiture, by the very terms of the covenant, unless the quantity of wood land was thus reduced, by the cutting it off for the purpose of building, repairing, fencing, or fuel for one dwelling house. The testimony does not inform us how much of the seven acres was cut off for those purposes; but there is no dispute but that the two acres cleared off by Denton, four or five years ago, were so cleared off without reference to any such purpose as authorized an encroachment upon the 21 acres. It is true that the forfeiture may have been waived by the subsequent receipt of rent by the lessor with a knowledge of the forfeiture.

(2.) It appears by the testimony, that since the quantity of woodland has been reduced below the number of acres reserved by the lease, valuable timber has been cut and sold for a mill shaft ; some 20 or 30 maple logs have been sawed into timber fit for wagon axletrees, and disposed of to purchasers ; alder trees, of a size varying from 2 to 6 inches in diameter, have been cut and burnt into coals and sold off the farm, besides some other wood which has been used for fire wood elsewhere than on the farm. This was all attempted to be justified, upon the ground that the tenants procured fire wood and fencing timber from their other lands, and that they had not withdrawn from this particular lot more wood than they were authorized to do by the lease, though they had used it for other purposes. We are aware that these covenants are to be liberally construed to prevent a forfeiture; but we do not believe that the court can

make for the parties a new contract, or essentially change the old one.   It is still a binding contract upon the parties, and if either party has violated its plain provisions, he must submit to the consequences prescribed by the instrument itself.   We are therefore bound to hold that the fact that the tenant has chosen to procure his fire wood and fencing timber from other lands, does not justify him in cutting and selling valuable tim- ber which good husbandry would dictate should not be used for either of those purposes.   This would be to allow the tenant to change materially the terms of the covenant.   His fire wood should be *reasonable estovers,* which would require him to use first the dry and dead trees, if such were to be found on the premises ; and the cutting of green trees for such use, without necessity, would be waste.   (7 *T. R.* 234.)   By what authority, then, can he say, "I will leave this fire wood to decay on the prem- ises, and indemnify myself by taking valuable timber in its stead ?"   So, too, the most appropriate timber for fencing should be used ; and the lease does not authorize the tenant to pro- cure his rails from other premises, and make that an excuse for selling off the valuable maple timber.   Again ; it would seem that there was a large growth of alders on this farm, and that this kind of wood is valuable for coal.   This was a kind of wood or timber which the tenant had no right to remove from the land.   And the fact that it is comparatively short lived, does not alter the rights of the tenant, under his covenant.   He had no right to use any of the wood or timber growing on the prem- ises, except for the specified objects ; and when he uses wood or timber for other than the specified objects, and such wood or timber as is not suitable for these specified objects, he commits a wrong against the lessor and diminishes the value of his re- versionary interest in the premises.   We see no justification for these violations of the covenants in the lease.   It will be ob- served, that we say nothing of a case, in which the tenant should take *precisely what,* and precisely as much, and no more than the lease authorized, though he should use it otherwise than was contemplated by that instrument.   For instance, if he had a house, not on the premises, but near them, we do not

Clarke v. Cummings.

say that he could not use the fire wood, which the lease gives him, in his house, though not situated on the premises. What we mean to say is this, that he must comply substantially with the conditions of the lease. He cannot omit for years to take fire wood and fencing timber from the lot, suffering the wood proper for these uses to be decayed and wasted ; and then by way of compensation or indemnity, enter upon the premises and take timber and wood to which the covenant never gave him a right.

3dly. If the plaintiff has received the rent accruing after any of those acts which would give him a right to declare the lease forfeited, with a knowledge of those acts, the forfeiture is waived. But it must appear that he had knowledge of such acts. In 7 *John. Rep.* 234, 235, Judge Van Ness, says, in a like case, " It does not appear that the lessors or their successors knew that a forfeiture had been incurred, and the acceptance of rent, *unless they did, at the time, know of this fact, is no waiver.*" If there were facts in this case to show such knowledge, this question should have been submitted to the jury.

It is also argued that the premises have been forfeited by a failure to plant or replace the requisite number of apple trees. But we are of the opinion, with the justice before whom the case was tried, that there was no evidence that the number of trees was deficient when the suit was commenced. The only witness who gave any evidence on this point, made his examination but a short time before the trial. This was not enough. For aught we know, the missing trees had been torn up by the wind or otherwise destroyed after the suit was commenced.

A new trial is granted.